CASE No. 821.

GRAHAM v. MOORE.

1. By the will of a testator who died in 1816, a tract of land was devised to A, and if A should die not having any male heir, then to B; and by a subsequent clause the land devised was not to be alienated nor conveyed by A nor his heirs, but should, at his death, descend to his oldest male heir and so on in regular succession. A having issue a son, conveyed the land, and afterwards during A's lifetime the son died without having had issue. *Held*, a fee conditional in A, and that his vendee took a good title.

2. The grandson of A, the son of his deceased daughter, having survived him, *doubted* whether A died without a male heir within the intention of the testator.

3. Where a case depends solely upon questions of law, it is the duty of the Circuit judge to direct a verdict.

Before PRESSLEY, J., Abbeville, September, 1879.

Action commenced in September, 1877, by A. J. Graham against W. H. Moore, for the recovery of a tract of land. Both parties claimed under the will of James Graham, the elder, who died in January, 1816, the plaintiff under deed from William Graham, the brother of James Graham, Jr., executed after the death of James Graham, Jr., and the defendant under deed dated January 11th, 1877, from John W. Moore, who purchased from James Graham, Jr., December 5th, 1844. The defendant also claimed by adverse possession. James Graham, Jr., died in September, 1875. On December 5th, 1844, James Graham, Jr., had a son, but this son died without issue in his father's lifetime. At the time of James Graham, Jr.'s, death, his sole heir was a

grandson, the son of a deceased daughter. The land in dispute
is embraced within the terms "all other lands not hereafter men-
tioned," used in the will. The will is sufficiently stated in the
opinion of the court.

The presiding judge held that the will of James Graham
(after the death of his wife and son William) gave an absolute
estate to James Graham, grandson, a fee defeasible, but that the
contingency upon which the remainder to "his brother William"
was to take effect had not happened; and that having had a son
Valentine, who died before his father, at the age of sixteen
years, the sale and conveyance by James Graham, grandson, to
John W. Moore conveyed good title; and he directed the jury
to find for the defendant. To all of this charge and direction,
the plaintiff excepted.

Verdict for defendant, and plaintiff appealed.

*Mr. Eugene B. Gary*, for appellant.

No words of limitation necessary to create a fee by devise.
*Gen. Stat.* 443. The last clause in a will revokes the first where
inconsistent. 1 *Hill Ch.* 360. Limitations to a class succes-
sively are valid, where they must necessarily take, if at all,
within the required limits. *Lewis on Perp.* 421–423. It must
take effect within a life or lives in being and twenty-one years
afterwards. 12 *Rich.* 396. The oldest male heir is *designatio
personæ*, who takes by purchase and not by descent, thus avoid-
ing the rule in *Shelley's case*. The person thus described took a
contingent remainder, for the son of James Graham, Jr., was
not *in esse* when the limitation took effect. The contingent
remaindermen were barred by the alienation, and the estate at
his death revoked to testator's heirs. 10 *S. C.* 376; *Dud. Eq.*
115. In 11 *Rich. Eq.* 527 and 12 *S. C.* 168, the person who
was to take at the termination of the life-estate were in being at
the time the limitation to the life-tenant took effect. The rule
distinguishing vested from contingent remainders will be found
in 1 *Strob. Eq.* 43; 13 *Rich. Eq.* 114. The Circuit judge held
that defendant could not claim by adverse possession upon the
authority of *Rich. Eq. Cas.* 361; 2 *Rich. Eq.* 259; 4 *Johns.*
390; 2 *Wend.* 357. In this will the latter clause controls the

first. If plaintiff is entitled to any portion of this land, by pur-chase from one of testator's heirs, he should recover that por-tion. 1 *McC.* 161.

*Mr. O. T. Calhoun,* same side.

*Mr. S. McGowan,* contra.

February 27th, 1880. The opinion of the court was delivered by

McIVER, A. J. This case depends upon the construction of the will of James Graham, Sr., and the question is, whether the attempted limitation over to William Graham, after the devise to James, the grandson, is good. In one clause of the will the testator declares as follows: "And my will is that at my son William's death, the above-mentioned plantation and all other lands not hereafter mentioned, shall be vested in and be the property of my grandson, James Graham, and son of William Graham; and if the said James Graham should die not having any male heir, then and in that case the above lands to be the property of his brother, William Graham." After making several similar devises to others of his grandsons, the testator proceeds as follows: " And my will is, and be it well understood, that the before-mentioned lands that is hereby willed to the be-fore-mentioned legatees, shall not be alienated or conveyed by them nor their heirs, but shall, at each of their deaths, descend to each of their oldest male heirs, and so on in regular succes-sion."

The clauses in the will are not numbered, but as these two, which are above quoted, are the only ones which throw any light upon the question under consideration, they will, for convenience sake, be referred to as the first and second clauses.

It appears from the evidence that James, the devisee named in the first clause, married and had issue—a son and a daughter by his first wife, and two others, children of a second wife—and after the birth of such issue and before their death, he conveyed the land in dispute to the person under whom the defendant claims. The said James died lately, leaving no child surviving

him, but leaving a grandson, the child of a daughter. After the death of James, William, the remainderman named in the first clause, conveyed the land to the plaintiff.

The provisions of the act of 1853 (12 *Stat.* 298) cannot be applied to this case, inasmuch as by the express terms of that act its provisions are to be applied only to deeds or other instruments in writing not testamentary, executed after the passage of the act, or to wills of testators dying after that act was passed. Here the testator died long before the passage of the act of 1853, and therefore the inquiry must be what was the estate created in the grandson James, by the terms of the will under consideration, construed by the law as it stood prior to the passage of that act. If the first clause of the will stood alone, it is very obvious that the attempted limitation over to William must fail for remoteness, and the devise to James would create in him a fee simple. The words. "shall be vested in and be the property of my grandson James," would, if nothing more were added, undoubtedly give him the fee. For, although this will took effect prior to the passage of the act of 1824, and although there are no words of inheritance in the devise to James, yet it has been settled by repeated adjudications in this state that the provisions of that act simply declare a rule of construction and apply as well to wills taking effect before as to those taking effect after the passage of the act of 1824. *Dunlap* v. *Crawford*, 2 *McC. Ch.* 171 ; *Hall* v. *Goodwyn*, 4 *McC.* 442 ; *Peyton* v. *Smith*, 4 *McC.* 476 ; *Bowers* v. *Newman*, 2 *McM.* 472. What, then, is the effect of the superadded words : "and if the said James Graham should die not having any male heir, then and in that case the above lands to be the property of his brother, William Graham." The words "die not *having* any male heir," must be regarded as not so effectual to tie up the generality of the expression as the words "die not *leaving* any male heir ;" for, as Johnson, Chancellor, in *Hay* v. *Hay*, 3 *Rich. Eq.* 387, in speaking of the word "*leaving*," says, it is "a word that has been held to indicate the time of the first taker's death, as pointing out the juncture when he *leaves* (separates or departs from) his issue, who are then *left* living behind him." And yet, ever since the case of *Forth* v. *Chapman*, 1 *P. Wms.* 663, the rule has been well established in

England that the words " die leaving no issue," or other equivalent words, would not create a valid limitation over of real estate, but that such limitation, as to that kind of property, would be too remote, as importing an indefinite failure of issue, and not a failure of issue at the time of the death of the first taker. The rule established by that case was adopted in this state and uniformly followed until the legislature saw fit to interpose by passing the act of 1853, which, as we have seen, does not apply in this case. *Mazyck* v. *Vanderhorst, Bail. Eq.* 48 ; *Adams* v. *Chaplin,* 1 *Hill Ch.* 265 ; *Hay* v. *Hay,* 3 *Rich. Eq.* 384 ; *Curry* v. *Sims and Jeter,* 11 *Rich.* 489.

The manifest intention of the second clause of the will above quoted was to create a perpetuity in the male line of the testator, and, as this is contrary to the policy of the law, such a construction is inadmissible. But the two clauses of the will should be read together, and so reading them we have a devise to James, and, at his death, to his oldest male heir, and in case he should die not having any male heir, then over. This would create a fee conditional in James ( *Whitworth* v. *Stuckey,* 1 *Rich. Eq.* 404,) and he having alienated after the birth of issue the alienation is good, and not only cuts off the descent to his male heir *per formam doni,* but defeats the reversion to the testator or his heirs upon the failure of such issue, even though such issue may have died before him. *Barksdale* v. *Gammage,* 3 *Rich. Eq.* 271.

Again : James Graham did have a male heir at the time of his death, a grandson, who was the son of a daughter, and, under the case of *Beckham* v. *De Saussure,* 9 *Rich.* 531, it may well be doubted whether the contingency has happened in which the estate was to go over to William.

It seems to us, therefore, that in any view which may be taken of the case the judgment of the Circuit Court must stand.

So far as the third ground of appeal is concerned, it is only necessary to say that, inasmuch as the case depended solely upon questions of law, it was not only the right but the duty of the Circuit judge to instruct the jury as he did.

The judgment of the Circuit Court is affirmed.

WILLARD, C. J., concurred.